IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES ANTHONY BARNETT, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14CV732 |
| ) | |
| ALAMANCE COUNTY SHERIFF ) | |
| OFFICE DETENTION CENTER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court upon Defendants Alamance County Sheriff Terry Johnson (incorrectly referred to in the Complaint as the "Alamance County Sheriff Office Detention Center"), Nurse Janice Tilley, Nurse Susan Fortner (incorrectly referred to in the Complaint as "Nurse Fontier"), Nurse C. Kennedy (incorrectly referred to in the Complaint as "Nurse Betty"), Nurse Eve Schon (referred to in the Complaint as "Nurse Eve"), Nurse Jeff Schenk (referred to in the Complaint as "Nurse Jeff"), Nurse Kristin Whitlow (referred to in the Complaint as "Nurse Christie"), and Nurse Debbie Yates' (referred to as "Nurse Debbie") Motion for Summary Judgement. (Docket Entry 48.) Plaintiff James Anthony Barnett, Jr., filed a Response. (Docket Entry 62.) Defendants filed a Reply. (Docket Entry 65.) For the following reasons, the Court recommends that Defendants' Motion for Summary Judgement be granted.

1

# I. BACKGROUND

Plaintiff, a prisoner of the State of North Carolina, filed this action pursuant to 42 U.S.C. § 1983 on August 26, 2014. (Docket Entry 2.) Plaintiff alleges that his Fourteenth Amendment rights were violated because the Alamance County Sheriff Office Detention Center ("Detention Center") and its medical staff were deliberately indifferent to Plaintiff's priapism ("an erection that [will] not go away").[1] (*Id.* at 4-8.) Plaintiff seeks over 2 million dollars in damages. (*Id.* at 9.) Plaintiff also seeks injunctive relief ordering the Detention Center and medical staff "to stop ignoring, denying and delaying inmates medical treatment," requiring "better decisions and judgements be made at the [Detention Center] by [the medical staff], based on mere commonsense and knowledge and based on medical training and expertise, regardless of what that person(s) colleague(s) may say or think," ordering each nurse to be suspended while the suit is pending and suspended permanently if Defendants are found liable, and an order for Defendants to pay Plaintiff's court and attorney fees if they are found liable. (*Id.*)

# II. STANDARD OF REVIEW

Summary judgment is warranted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has

---

[1] Detailed facts with respect to the medical staff's treatment of Plaintiff are provided in the analysis.

met its burden, the non-moving party must then affirmatively demonstrate the presence of a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When making a summary judgment determination, the court must view the evidence and justifiable inferences from the evidence in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913. However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). "[T]he pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits" should be viewed in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c); *Gray v. Farley*, 13 F.3d 142, 145 (4th Cir. 1993) (citation and quotations omitted). "In essence, a summary judgment must be granted if no genuine issue of material fact remains such that a reasonable jury could not return a verdict for a nonmoving party." *Gray*, 13 F.3d at 145 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1987)) (quotation omitted).

### III. DISCUSSION

In support of their Motion for Summary Judgment Defendants allege the following grounds: (1) Plaintiff did not exhaust all of his administrative remedies before bringing this action, (2) the record indicates that Plaintiff does not suffer from permanent erectile dysfunction, (3) Plaintiff fails to establish that the nurses acted with deliberate indifference, (4) Sheriff Johnson is entitled to summary judgment, (5) the Court should find that Defendants are entitled to qualified immunity, (6) there is not a causal link between Defendants' actions

3

and Plaintiff's alleged injuries, and (7) all state law claims for medical negligence should be dismissed. (Defs.' Summ. J. at 26-30.)

### A. Plaintiff Failed to Exhaust His Administrative Remedies

Defendants contend that Plaintiff's claim fails because he did not exhaust all of his administrative remedies before bringing this action. Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust all available administrative remedies prior to bringing an action "with respect to prison conditions" under 42 U.S.C. § 1983. *Johnson v. Fields*, 616 F. App'x 599, 600 (4th Cir. 2015); *Hendricks v. Barnes*, No. 1:06CV799, 2007 WL 2257565, at *2 (M.D.N.C. Aug. 3, 2007). "Such exhaustion must be proper; that is, the prisoner must use all steps that the agency holds out and do so properly." *Johnson*, 616 F. App'x at 600 (citation and quotation omitted). A plaintiff is not excluded from the exhaustion requirement because he or she is no longer at the facility where the incident occurred. *Barnes*, 2007 WL 2257565, at *2. "The reason behind such a rule is clear—to allow such a bypass would permit a prisoner to evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one and still gain access to a federal forum." *Id.*

Here, according to Nurse Tilley, the Detention Center's supervising nurse, a written grievance procedure was available to all inmates during the course of Plaintiff's confinement. (Tilley Aff. ¶ 42, Docket Entry 49.) Inmates could file an "Inmate Medical Grievance Form" to complain about any aspect of medical treatment received. (*Id.*) The hospital staff reviews and responds to all grievances filed. (*Id.*) Additionally, if the inmate is unhappy

4

with the response, he has to appeal the grievance to senior members of the detention staff. (*Id.*) This case concerns events that took place between January 29, 2013, and February 4, 2013. (Compl. at 4-8, Docket Entry 2.) Plaintiff argues that the "Medical Staff refused to allow [him] to receive a medical grievance." (*Id.* at 3.) According to the Alamance County Detention Center Medical Records ("medical records"), Plaintiff was provided with a grievance form on February 3, 2013, but Plaintiff chose not to file a grievance with respect to these circumstances. (Med. R. at 35, Docket Entry 59.) Therefore, because Plaintiff has failed to exhaust all administrative remedies, his claims are barred.[2] *Murray v. Dobyns*, No. 1:12CV214, 2013 WL 3326661, at *3 (M.D.N.C. July 1, 2013) (finding that the plaintiff failed to exhaust his administrative remedies because he did not appeal the denial of his grievances which was required by the North Carolina Department of Corrections three step Administrative Remedy Procedure); *Goodwin v. Beasley*, No. 1:09CV151, 2011 WL 835937, at *3 (M.D.N.C. Mar. 3, 2011) (finding that the plaintiff's conclusory allegations that prison officials did not cooperate with him and that the grievance process at the jail was defective are not enough to excuse his failure to exhaust his administrative remedies).

### B. The Nurses Did Not Act with Deliberate Indifference

Notwithstanding Plaintiff's failure to exhaust his administrative remedies, summary judgment is still proper because the nurses did not act with deliberate indifference. Generally, "only governmental conduct that shocks the conscience is actionable as a violation

---

[2] It is even more apparent that Plaintiff was aware of the grievance process because he filed five grievances between February 17, 2013, and March 11, 2013. (Med. R. at 86, 91, 93-95.)

of the Fourteenth Amendment." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (citation and quotations omitted). "In cases where the government is accused of failing to attend to a detainee's serious medical needs . . . conduct that amounts to deliberate indifference is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim." *Id.* at 302 (quotation and citation omitted). For Plaintiff to recover, he must establish that "[D]efendants actually knew of and disregarded a substantial risk of serious injury to [Plaintiff] or that they actually knew of and ignored [Plaintiff's] serious need for medical care." *Id.*

Here, Plaintiff asserts that the nurses "acted with deliberate indifference to any and all of his serious medical needs." (Resp. Br. at 2, Docket Entry 62.) Plaintiff claims that once he was discharged from the emergency room the nurses at the Detention Center failed to comply with the emergency room discharge instructions. (Compl. at 4, Docket Entry 2.) According to Plaintiff, the discharge instructions required him "to return to the emergency room in (3 to 4) hours, if the erection had not went away . . . ." (*Id.*) Plaintiff states that from the time he arrived at the Detention Center on January 29, 2013, until January 31, 2013, Plaintiff "declared medical emergencies, filled out sick calls and . . . begged and pleaded with medical staff to send [him] back to the hospital." (*Id.*) Subsequently, Plaintiff was sent to the emergency room on January 31, 2013. (*Id.*) Plaintiff alleges that prior to going back to the emergency room, the "medical staff did not give or offer [Plaintiff] any type of pain medication, or do anything to try and relieve [Plaintiff] of [his] pain . . . ." (*Id.* at 5.) Further, Plaintiff alleges that upon returning to the Detention Center his condition worsened. (*Id.*)

6

Plaintiff alleges that he "constantly begged for medical treatment and had [his] family and friends calling to the Medical Department." (*Id.*) Plaintiff alleged that Nurse Fortner examined Plaintiff and told him "that she was not going to do anything about [Plaintiff's] current condition." (*Id.* at 6.) The next day Plaintiff was examined by Nurse Tilley and sent back to the emergency room and eventually sent to the University of North Carolina Hospital in Chapel Hill for an operation. (*Id.*)

Contrary to Plaintiff's allegations "the record evinces no medical treatment that rises to the level of deliberate indifference." *Lindsay v. Lewis*, No. 1:11CV67, 2013 WL 4500690, at *6 (M.D.N.C. Aug. 21, 2013) (finding that the plaintiff failed to provide evidence to the contrary that he "received the appropriate treatment for the injuries sustained"). "In evaluating a medical care case, the Court may rely on medical records to . . . determine whether the injury was in fact serious." *Pulliam v. Superintendent of Hoke Corr.*, No. 1:05CV01000, 2007 WL 4180743, at *3 (M.D.N.C. Nov. 20, 2007); *see also Harden v. Green*, 27 F. App'x 173, 177 (4th Cir. 2001) (finding that an examination of the medical records showed that the plaintiff's condition improved under the care of the physician that plaintiff alleged provided inadequate medical treatment).

According to the medical records, upon his arrival to the Detention Center, Plaintiff was examined shortly after being booked. (Med. R. at 23-24, Docket Entry 59.) Plaintiff's vital signs were checked and there is nothing in the record indicating that Plaintiff was suffering from a medical emergency. (*Id.* at 23.) Additionally, the medical records show that Plaintiff's emergency room discharge instructions did not require him to return to the

7

emergency room if his erection did not cease within 4 hours:

> For a recurrent priapism (erection greater than 4 hours) take [T]erbutaline 5 mg tab every 6 hours as needed. If you still have an erection after 1 tab, you need to be evaluated. Follow up with Dr. Walker in [K]ernodle clinic. You ultimately need to have further blood work for sickle cell trait done. Take Sudafed as well with the [T]erbutaline.

(*Id.* at 26.) The instructions expressly state that Plaintiff was to be given Terbutaline if his erection lasted more than four hours. (*Id.*) Furthermore, medical staff complied with the instructions by giving Plaintiff Terbutaline and Sudafed. (*Id.* at 30.) The medical records indicate that Plaintiff did not complain of pain until January 31, 2013, when he filed a sick call request. (*Id.* at 31.) Plaintiff was promptly examined on the same day. (*Id.*) Neither party disputes that Plaintiff was transported to the Alamance County Medical Center and returned to the Detention Center on February 2, 2013. (Compl. at 5, Docket Entry 2; Defs.' Summ. J. at 11.) Plaintiff's allegations that he was deprived of medical attention after returning to the Detention Center on February 2, 2013, are insufficient to hold Defendants liable. Three nurses interacted with Plaintiff between the time he returned to the Detention Center on the afternoon of February 2, 2013, and the evening of February 3, 2013. (Med. R. at 35-37, 46-47, Docket Entry 59.) First, Nurse Schenk indicated that, during his shift on February 2, 2013, Plaintiff stated that he was doing much better than he did when he went to the hospital and that his swelling was greatly reduced. (*Id.* at 35.) At the start of Nurse Schenk's shift on February 3, 2013, he checked the Nurses' in-house communication log. (*Id.*) There was "[no] mention of any problems with [Plaintiff]." (*Id.*) Later that day, Plaintiff expressed that he was upset that the Detention Center's medical doctor did not order

8

him any pain medication; however, Nurse Schenk, states that Plaintiff never actually complained about pain. (*Id.*) Second, Nurse Fortner reported that at the beginning of her shift on February 3, 2013, Plaintiff complained to Nurse Schenk about swelling pain. (*Id.* at 36.) According to Nurse Fortner's report, Plaintiff asked her for pain medication. (*Id.* at 37.) She replied that she would have to check with her supervisor to see if she could give Plaintiff the medicine. (*Id.*) After checking on other patients, Nurse Fortner had a discussion with Plaintiff. (*Id.*) Plaintiff discussed his concerns about his surgery. However, he did not verbalize any additional issues or complaints, nor did he request pain medication. (*Id.*) In fact, Plaintiff "continued to discuss how big his penis was with a slight grin on his face." (*Id.*) Lastly, Nurse Schon reported that Plaintiff approached her about being sent to UNC if his erection did not subside and whether she had medication for him. (*Id.* at 46.) Later, Nurse Schon reviewed Plaintiff's medical record and realized that he was supposed to receive medication prescribed by Doctor Strickland that evening. (*Id.* at 47.) Nurse Schon returned to Plaintiff's cell and gave him the medication. (*Id.*)

The Court recognizes that there is a contradiction between Nurse Schenk's and Nurse Fortner's reports. Nurse Schenk states that Plaintiff never complained about pain on February 3, 2013, while Nurse Fortner reports that Nurse Schenk told Nurse Fortner that Plaintiff complained about pain from swelling on that date. (*Id.* at 35-36.) In fact no pain medication was given to Plaintiff between February 2, 2013, and February 4, 2013. (*Id.* at 36.) Nonetheless, even if the Court were to find that the medical staff's failure to provide pain medication for Plaintiff for a day and a half during a time in which his condition worsened

9

constituted inadequate treatment, the nurses still cannot be found liable. According to Nurse Tilley, "[a]s a general rule Nurses . . . were not authorized to prescribe or dispense medication without the orders of a Medical Doctor." (Tilley Aff. ¶27, Docket Entry 49.) Doctor Strickland, the Detention Center Doctor, made the decision to not prescribe Plaintiff pain medication upon returning to the Detention Center on February 2, 2013. (*Id.* at 36.) The Nurses cannot be found liable for something they do not have authorization to do. *Parker v. Burris*, No. 1:13CV488, 2015 WL 1474909, at *7 (M.D.N.C. Mar. 31, 2015) *report and recommendation adopted*, No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015) *aff'd*, 623 F. App'x 82 (4th Cir. 2015) (finding that because a nurse cannot prescribe medication, "Plaintiff's assertion that her alleged inaction in regards to pain medicine amounted to deliberate indifference" was meritless); *see also Smith v. Harris*, 401 F. App'x 952, 953 (5th Cir. 2010) (holding that because a nurse could not write prescriptions, the plaintiff failed to establish that she acted with deliberate indifference by not prescribing him pain medication). Therefore, Plaintiffs deliberate indifference claim with respect to the nurses fails.

### C. Nurses' Qualified Immunity

Summary judgment is also proper because the nurses are entitled to qualified immunity. "Determining whether qualified immunity applies involves a two-prong inquiry: whether the facts make out a violation of a constitutional right and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Parker v. Burris*, No. 1:13CV488, 2015 WL 1474909, at *5 (M.D.N.C. Mar. 31, 2015) *report and recommendation adopted*, No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015) *aff'd*, 623 F. App'x 82 (4th Cir. 2015);

10

*Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Reeves v. Ransom*, No. 1:10CV56, 2014 WL 1323173, at *7 (M.D.N.C. Mar. 31, 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "The burden of proof and persuasion rests with the official asserting qualified immunity." *Id.*

Plaintiff has not stated a claim for a constitutional violation; therefore, this Court concludes that the nurses are entitled to qualified immunity. *See Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there"); *Parker*, 2015 WL 1474909, at *8 (finding that "the absence of evidence supporting a finding that a constitutional violation occurred satisfies the first prong of the qualified immunity analysis").

### D. Sheriff Johnson Did Not Act with Deliberate Indifference

Plaintiff alleges that Sheriff Johnson is also liable for the medial staff's failure to provide adequate treatment. (Compl. at 8, Docket Entry 2.) Plaintiff filed this action against Sheriff Johnson in his individual and official capacity. (*Id.* at 9.) Plaintiff's 1983 claim against Sheriff Johnson in his individual capacity must be based upon supervisory liability or a failure to train because the doctrine of *respondeat superior* does not apply under 42 U.S.C. § 1983. *Cobbs ex rel. Cobbs v. Cty. of Guilford*, No. 1:10CV806, 2012 WL 3113141, at *3 (M.D.N.C. July 31, 2012) *report and recommendation adopted as modified*, No. 1:10CV806, 2012 WL 4508106

11

(M.D.N.C. Sept. 28, 2012); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff contends that Sheriff Johnson:

> had direct knowledge of [the] violations made by his medical staffing, via receiving telephone calls from [Plaintiff's] family and friends and having telephone conversations with them. Still Sheriff . . . Johnson, chose to ignore the complaints from my family and friends. [Plaintiff] even wrote, Sheriff . . . Johnson, a letter but . . . received no reply. Sheriff . . . Johnson, did not take [any] type of action[] at all, to get [Plaintiff] any type of medical treatment or to [address] the direct violations made by his medical staffing.

(Compl. at 9, Docket Entry 2.) It appears that Plaintiff asserts that Sheriff Johnson is liable in his supervisory capacity. Plaintiff must satisfy three elements to establish Sheriff Johnson's supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an 'affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citation and quotation omitted); *Wright v. Hill*, No. 1:03CV109, 2004 WL 1618591, at *5 (M.D.N.C. July 16, 2004) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (quotations omitted). Plaintiff received adequate treatment while detained at the Detention Center between January 29, 2013, and January 31, 2013. Therefore, the only time frame in question Plaintiff could possibly seek relief is between February 2, 2013, and February 4, 2013. However, Plaintiff only provides conclusory allegations to support his contention that Sheriff Johnson is liable in his supervisory capacity. Based on Plaintiff's conclusory allegations, the Court cannot determine

12

if Sheriff Johnson had knowledge of the fact that Plaintiff did not receive pain medication between February 2, 2013, and February 4, 2013. Plaintiff states that Sheriff Johnson had direct knowledge of the violations because Plaintiff's family and friends had phone conversations with Sheriff Johnson. (Compl. at 9, Docket Entry 2.) Plaintiff does not explain which family members or friends, or even how many actually called Sheriff Johnson. It is unclear which alleged violations were discussed during the phone conversations. Moreover, the Court cannot determine whether these calls were made before, after, or at all between, February 2, 2013, and February 4, 2013. *Safford v. Barnes*, No. 1:14CV267, 2014 WL 5819380, at *5 (M.D.N.C. Nov. 10, 2014) (finding that the plaintiff failed to allege facts showing that a Sheriff had actual or constructive knowledge of the alleged constitutional violation); *Layman v. Alexander*, 294 F. Supp. 2d 784, 794 (W.D.N.C. 2003) (concluding that the plaintiff failed to provide facts to support his conclusory allegations that the Sheriff failed to properly supervise and train the jail and medical staff); *see also Evans v. Jefferson Cty. Comm'n*, No. CV-11-BE-2131-S, 2012 WL 1745610, at *8 (N.D. Ala. May 15, 2012) (finding, in pertinent part, that because the plaintiff failed to allege how the Sheriff had subjective knowledge of the inmate's medical condition, the plaintiff could not establish that the Sheriff acted with deliberate indifference).

Additionally, Plaintiff contends that he "even wrote, Sheriff . . . Johnson, a letter but [Plaintiff] received no reply." (*Id.*) Nevertheless, the Plaintiff does not produce a copy of the letter, nor has Plaintiff explained the contents of the letter. Furthermore, Plaintiff alleges that Sheriff Johnson received the letter between January 30, 2013, and February 1, 2013.

(Docket Entry 63-9 ¶ 3.) Therefore, because the letter was sent before February 2, 2013, the date Plaintiff alleges he was denied pain medication, the letter did not put Sheriff Johnson on notice to adequately address Plaintiff's issue in accordance with the supervisory liability test. Thus, because Plaintiff has "fail[ed] to properly support an assertion of fact," Plaintiff's claim against Sheriff Johnson in his individual capacity fails. Fed. R. Civ. P. 56(e).

Next, Plaintiff contends that Sheriff Johnson in liable in his official capacity. (Compl. at 8, Docket Entry 2.) However "such claims actually constitute a suit against the entity of which those officials are agents—in this case," the Alamance County Sheriff's Office. *Gantt v. Whitaker*, 203 F. Supp. 2d 503, 508 (M.D.N.C. 2002) *aff'd*, 57 F. App'x 141 (4th Cir. 2003). Plaintiff must establish that an official policy or custom of the Sheriff's Office caused his injury in order to survive summary judgment. *Id.* at 509. Plaintiff does not argue that an official policy or custom caused his injury, nor does Plaintiff provide evidence to support his claim against Sheriff Johnson in his official capacity. Plaintiff merely states that Sheriff Johnson was aware of the inadequate treatment Plaintiff received and failed to do anything about it. (*Id.*) Thus, because Plaintiff did not provide any facts or evidence to support his claim, this argument fails.

### E. Proximate cause

Defendants also contend that Plaintiff has not established a causal link between Defendants' actions and Plaintiff's alleged injuries. "Constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." *Huger v. Anderson*, No. 1:12CV1242, 2015 WL 1525994, at *4 (M.D.N.C. Apr. 2, 2015) *report and*

*recommendation adopted as modified*, No. 1:12CV1242, 2015 WL 1915893 (M.D.N.C. Apr. 27, 2015) (citation and quotation omitted). "In cases brought under § 1983 a superseding cause, as traditionally understood in common law tort doctrine, will relieve a defendant of liability." *Id.*

Defendants contend that Plaintiff has blamed two other parties, the Alamance Regional Hospital and Rockingham County Sheriff Sam Page for injuries. (Defs.' Br. at 29-30, Docket Entry 58). Defendants also assert that "Plaintiff . . . inflicted injury on his own penis through the acts of self-mutilation described in the UNC Hospital records." (*Id.* at 30.) The University of North Carolina Chapel Hill Hospital records ("UNC hospital records") indicated that Plaintiff "is very manipulative and has a pattern of swallowing objects and also shoving objects inside his penis, anything to avoid being in the prison cell." (UNC Med. R. at 3, 5, Docket Entry 60.) Defendants contend that instances of self-mutilation happened after the circumstances at issue here occurred between January 29, 2013, and February 3, 2013. This is possible considering that the UNC hospital record describing Plaintiff's self-mutilation is dated October 20, 2014. (*Id.* at 3, 5.) In any event, the UNC hospital records indicate that Plaintiff has a history of self-mutilation. (*Id.*) Therefore, Plaintiff may have shoved objects in his penis before or after January 29, 2013.

Furthermore, the nurses adequately addressed Plaintiff's medical needs; therefore, it is unlikely that Defendants caused Plaintiff's injury. "Given these circumstances, the record does not support a finding that Defendant represented the proximate cause of Plaintiff's injuries, as required to establish liability under § 1983." *Huger v. Anderson*, 2015 WL 1525994,

15

at *4 (M.D.N.C. Apr. 2, 2015). Therefore, it is recommended that Defendants' Motion for Summary Judgment be granted.

## IV. CONCLUSION

For the reasons stated herein, **IT IS THEREFORE RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 48) be **GRANTED**.

Joe L. Webster
United States Magistrate Judge

April 7, 2016
Durham, North Carolina